KENNEY v. KNIGHT et al.

(Circuit Court, D. Massachusetts. January 15, 1904.)

No. 1,269.

1. SALES—CONTRACT—BREACH—DAMAGES—PROFITS.

Where defendant contracted to furnish plaintiff with such fire extinguishers as plaintiff should sell in two states during a certain period, and defendant refused to fill orders for extinguishers until plaintiff had complied with certain unjustifiable conditions, defendant was liable for damages based on the profits which plaintiff might have made on machines actually sold, or for which orders had been actually received, and for such other machines as plaintiff had reasonable expectation that he would be able to dispose of within a reasonable time, taking into consideration plaintiff's efforts previously made to create a market for the machines.

**2. SAME—NEW TRIAL—GROUNDS.**
   Unless in very exceptional cases, a new trial will not be granted on account of propositions which are afterthoughts, or which were not carefully and properly submitted to the jury during the progress of the trial.

On Motion of the Defendants for a New Trial.
See 119 Fed. 475.

Elder & Whitman, for plaintiff.
Charles A. Castle and Nason & Proctor, for defendants.

PUTNAM, Circuit Judge. This is a suit based on the alleged violation of a contract which we will refer to further on, and for damages on account thereof. The jury rendered a verdict for $1,000, and the defendants seasonably filed a motion to set the same aside and for a new trial. The first and second reasons given therefor relate to questions of law, which were fully ruled on by the court in its charge to the jury, and as to which exceptions have been reserved by the defendants; so that as to these the court is satisfied that any attempt on its part to revise its rulings on this motion for a new trial, instead of allowing them to go directly to the Circuit Court of Appeals, would merely delay justice. The remaining ground for the motion is that the damages awarded by the jury are said to be excessive.

It is not necessary to state the questions involved in the case at length or with absolute accuracy. The plaintiff, who resided in South Carolina, entered into a contract which, with modifications, amounted to an agreement on the part of the defendants to fill his orders for fire extinguishers of the manufacture of the defendants, to be sold or resold by him in the states of South Carolina and North Carolina. The parties had several misunderstandings, and neither of them held firmly to any definite position for any great length of time; the result of which involved serious complications of the situation when the case came to trial, requiring the submission to the jury of numerous issues, conditioned to some extent the one on the other. The court refers to this only for the purpose of illustrating what it will have occasion to observe further along.

The contract became operative in December, 1901, or January, 1902. The proceedings under it were suspended for a considerable period during the late winter and spring; but prior to July 1, 1902, the plaintiff had actually sold and delivered 64 extinguishers. On July 19, 1902, the defendants, who resided at Boston, in Massachusetts, wrote a letter to the plaintiff, the effect of which, as found by the jury under the instructions of the court, was not to terminate the contract, but to notify the plaintiff that they would fill no more orders for extinguishers until he complied with certain conditions named therein. Under the instructions of the court, the jury found that the defendants were not justified in imposing the conditions named in the letter, but that, on the other hand, the letter did not terminate the existing contractual relations, and merely postponed further proceedings until its conditions were complied with. On the same date, by a letter written at Raleigh, N. C., the plaintiff ordered of the defendants 50 extinguishers; and, as this letter was mailed on the same day that the

letter of the defendants was written and mailed, it, of course, crossed the latter; so that, as the court instructed the jury, the plaintiff was entitled to have the order it contained duly filled. Consequently, under the rulings of the court, which need not be further stated, the jury might reasonably have found that the defendants were liable for the refusal to ship the 50 extinguishers, and that the damages ensuing therefrom were $5 for each extinguisher, or $250 in all, approximately the profit which the plaintiff would have made on the same. If the verdict had not exceeded $250, no question could arise on this motion.

Immediately after the receipt of the defendants' letter of July 19, 1902, the plaintiff commenced sending in orders rapidly, covering, between July 19 and September 4, 1902, including those ordered on July 19th, 527 extinguishers. The court, by instructions to the jury, limited the plaintiff's damages to such portion of the 527 machines as had been actually sold by the plaintiff—that is, for which orders had actually been received—and to such further portion as he had reasonable expectations that he would dispose of within a reasonable time. Without undertaking to give accurately the rulings of the court on this proposition, what we have said states it sufficiently in substance for the purposes of this motion. Of course, the jury were cautioned that they could not give full profits for those extinguishers which had not been actually sold, and in that respect proper limitations were explained to the jury, which need not be considered or restated here. The effect of the verdict was to give the plaintiff the equivalent of profits on 200 extinguishers. It is impossible for the court to ascertain whether in making up this amount the jury determined that he had actually sold, that is, had received actual orders for, 200 machines, or whether it availed itself of the permission of the court to take into consideration the whole, or at least a part, of the amount involved in pending negotiations.

However the jury reached its result, the defendants contend that the damages assessed were too high, and based on evidence so uncertain, untruthful, and unsatisfactory that the verdict ought not to be allowed to stand. By this it means that there was not sufficient evidence of orders received or negotiations pending to justify the allowance of so large a sum. The case in this respect turns entirely on the evidence of the plaintiff, which was very unsatisfactory as to the details of the orders which he had received, or for which negotiations were pending, and so inconsistent with itself, and so at odds with some undoubted facts established in the case, that if the verdict stood on this alone we would not hesitate to set it aside. But there was evidence from which the jury might well have concluded that during the period that the contract had run the plaintiff had exerted himself by traveling through the two states, South Carolina and North Carolina, and by advertising, and by otherwise preparing the field, in such way that very considerable sales would have been effected at or soon after the period when the orders in question were sent in. The defendants could not, of course, deny that their extinguisher was a desirable one, and therefore salable; and, geographically, we know that the field was an extensive one, and the jury might well, from what was proven and admitted in the case, have found, not only geographically, but

otherwise, that it was favorable for sales of this class of manufactures, and that the plaintiff had well worked the preparatory stages. In view of this, and also in view of the sales of 64 extinguishers in the early part of the year, even after rejecting the unsupported and unsatisfactory statements of the plaintiff to which we have referred, it is so reasonable to conclude that, if he had not been interrupted, the plaintiff might have sold at least 200 extinguishers during the autumn months, the court cannot adjudge that the jury was inconsiderate in that respect.

The complications of the case already referred to cause the court to hesitate as to its recollection of the course of the trial in all the particulars; but, after an examination of its charge to the jury, it thinks, on the whole, that the observations herein in reference to each are correct. What we have stated we believe disposes of the case as it was submitted to the jury, which ordinarily ought to end it on a motion for a new trial. On such a motion the parties should not be allowed to reverse the course of legal proceedings by force of propositions which are afterthoughts, or which were not carefully and properly submitted during the progress of the trial. Nevertheless, we are disposed to notice certain suggestions and propositions which occurred to the court and counsel in connection with the pending motion.

Aside from the 50 extinguishers ordered on the 19th of July, the orders for the remainder of the 527 were given under such circumstances that the question arose whether they were sent in in good faith. This might bear on the question of damages in three different aspects.

First, it bears directly on that question because, if not sent in in good faith, they form the basis of an argument that the plaintiff had not received the orders testified to by him, and had not under negotiation prospective orders, as also testified to by him. Second, it raises the question whether, so far as the orders were not sent in in good faith, if any of them were of that character, the defendants were bound to fill them, carrying with it the consequent proposition that, so far as not bound to fill them, the orders could not properly have been submitted to the jury with reference to the assessment of damages. Third, the final aspect is that, if not in good faith in part—that is, if they exceeded the reasonable requirements of the plaintiff—all the orders should have been taken together as one continuous transaction with reference to the assessment of damages, so that the jury should have been instructed that, if the orders exceeded the requirements of the plaintiff, the loss on the excess of the orders if they had been filled, leaving on the hands of the plaintiff unmerchantable articles, might have wiped out the profit on those which he might reasonably have expected to sell.

The first aspect was made use of to the jury by the defendants for whatever it was worth. The second and third aspects, however, were not brought to the attention of the jury, nor were they brought to the attention of the court before the jury retired. If they had been, it is plain that they would have involved important questions of law which the court would have been obliged to explain to the jury, and which might have afforded the basis of exceptions for either one party or the other. Therefore, by considering them now on this motion,

and by thus relieving the parties from the results of omissions to propose them during the course of the trial, injustice would be done.

On the whole, looking at all the circumstances of the case, we are unable to find that we would be justified in either setting aside the verdict or requiring its diminution.

The motion for a new trial, filed by the defendants on the 25th day of November, 1903, is denied.