[No. 4881.]

## Richner v. Plateau Live Stock Company.

1. **Pleadings — Amendments — An** amendment presenting a new issue, offered at the trial, nearly six months after the original answer was filed, and nearly two years after the institution of the action, was properly refused.—Pp. 304, 305.

2. **Appeals—Error Without Injury—If** a party is permitted to give evidence of the facts asserted by an amendment offered, the rejection of the amendment is not prejudicial error.—P. 305.

3. **Measure of Damages for Non-delivery of ˙Goods Sold—** Ordinarily the damages for failure to comply with a contract for the sale of chattels is the difference between the contract price and the market price; but, if like chattels are not to be had, and the vendor knows that the purchaser intended them for a special purpose, he is liable for any special damages resulting from his failure to deliver, which are the natural consequences of his default, e. g.: where hay is purchased to feed cattle, and, by the seller's refusal to deliver, the buyer is compelled to drive his cattle to a great distance to procure feed for them, and losses are sustained from the shrinkage of the cattle and the death of some by starvation.—Pp. 305, 306.

4. **Damages — Certainty —** Plaintiff is not required to show the amount of his damages with absolute certainty.—P. 306.

5. **Contract — Contracts Construed —** Agreement to deliver hay in stack to be measured "by the same rule and in the same manner" used in another instance specified, it seems that the formula used in the former instance for computing the cubic ·contents of the stack is also to be followed.—Pp. 303-306.

*Appeal from Rio Blanco District Court.*
*Hon. John T. Shumate, Judge.*

Mr. E. T. Taylor and Mr. C. W. Taylor, for appellant.

Mr. John A. Ewing, for appellee. ·

Mr. Justice Bailey delivered the opinion of the court:

On the 14th of August, 1900, the appellee, hereinafter designated as the plaintiff, entered into a contract with the appellant, defendant below, where-

in the defendant sold to plaintiff four hundred tons of hay, the same to be measured and delivered the 15th of November, 1900.  Among other things the contract contained the following provision:

"It is further agreed by the parties hereto that the hay shall be measured by the same rule and in the same manner that was used by Clarence L. Lamb in measuring the Turner and Gamsby hay in the year 1899, it being always understood that the cube of seven and one-half cubic feet shall constitute a ton."

Upon the 15th of November the dimensions of the stacks were taken by Lamb, the representative of plaintiff, and by the defendant.  They then agreed that the defendant would have his neighbor make the computations for the purpose of arriving at the amount of hay contained in the stacks, and that Lamb would also make computations.  This was done, the neighbor of defendant finding that there were 486.76 tons of hay in the stacks, and Lamb finding that there were 399.67 tons.  This discrepancy is explained by the fact that the two men used different formulas for the purpose of determining the cubical contents of the stacks, Lamb using the rule provided for in the contract, namely, the one he had used in 1899 in measuring the Turner and Gamsby hay.  That rule was to deduct the width of the stack from the distance over, divide by two, multiply by the length and multiply that result by the width, then divide by 422.  The neighbor of defendant adopted the following, which is called the government rule: Add the width to the distance over, divide this sum by four, square the result and multiply that by the length of the stack and then divide by 422.

Defendant refused to deliver and permit plaintiff to feed the hay according to the terms of the contract unless it would consent to the computation

made under the so-called government rule. The plaintiff owning in the neighborhood of 2,000 head of cattle to which it was expected to feed this hay, and being unable to procure a sufficient amount of hay elsewhere to properly sustain them, claimed that it suffered great loss and damage because of the failure of the defendant to comply with his contract, and brought this action to recover from defendant the portion of the purchase price which it had paid for the hay and its damages, estimated at five thousand dollars.

The complaint was filed February 6, 1902, the answer and cross-complaint was filed September 28, 1903, the replication March 31, 1904, and the matter came on for trial before the court without a jury upon the 31st of March, 1904. At the close of plaintiff's testimony the defendant asked leave to file an amended answer, wherein it was alleged that he had been deceived by the president of the plaintiff company, in that the president had represented to defendant that the rule used in the measurement of the Turner and Gamsby hay was the rule commonly adopted among the ranchmen in the neighborhood in which defendant resided. This application to amend the answer was denied, and the ruling of the court is assigned as error.

The matter of permitting the answer to be amended rested within the sound discretion of the court to whom the application was made, and in view of the fact that the complaint had been filed in February, 1902, and the answer filed in September, 1903, more than a year and a half after the filing of the complaint and about six months before the cause came on for trial, and that the granting of the application would have made an entirely different issue from that which the plaintiff had presented in its testimony, and one which it was not then prepared to

meet, the court committed no error in overruling the application. In any event the defendant was not prejudiced by the ruling of the court in this particular, because he was permitted to testify, without objection, to the conversation that took place at the time of the making of the contract.

The plaintiff introduced testimony tending to show the amount that it was damaged by reason of the defendant's failure to comply with the contract of sale. These various items consisted of the expense incurred in securing hay, the difference in price of the hay which plaintiff succeeded in buying in excess of what it had agreed to pay defendant, the cost of taking some of the cattle from the home ranch to where the hay had been secured, the expense of procuring other feed that had been purchased in addition to the hay, the loss of cows and calves from starvation, and the shrinkage of the entire herd because of the lack of feed. This testimony was introduced over the objection of defendant, but it was a proper charge against him. It is true that under ordinary circumstances the measure of damages for failure to comply with the terms of a contract for the sale of personal property is the difference between the price which the purchaser agreed to pay and the price which he is compelled to pay for like property in the open market; but, where like property cannot be obtained in the open market, and where the vendor knows that the purchaser has made the purchase for a specific purpose, a different rule prevails, and upon a breach, where the special purpose for which the goods were wanted by the vendee was known to the vendor, he is liable on the contract for any special damages resulting to the vendee, in the absence of fault upon the part of the vendee, from the failure to deliver the property, such special dam-

ages being the natural consequence of the non-delivery and presumably contemplated by the parties. —*Hammer v. Schoenfelder,* 47 Wis. 455; *Border City I. & C. Co. v. Adams,* 62 S. W. (Ark.) 591; 13 Cyc. 34, and cases there cited; *Dean v. Mich. Stove Co.,* 69 Ill. App. 109.

There was considerable testimony introduced by both sides as to the loss sustained by plaintiff on account of the shrinkage of the cattle occasioned by the lack of sufficient feed and of the necessary driving of a portion of them a distance of forty miles to a place where other feed could be obtained, and their return before the opening of spring and the starting of grass, which return was made necessary by circumstances over which the plaintiff had no control. Although it may be exceedingly difficult to definitely determine the exact difference in value of an animal which had been poorly fed through the winter and one which had been well fed, this testimony was admissible.

It is not a sufficient reason for disallowing damages claimed that a party can state the amount only approximately. It is enough if from approximate estimates of witnesses a specific conclusion can be reached. It is not necessary to show the exact amount of damages with absolute certainty.—13 Cyc. 37, and cases cited.

The value of the hay to the purchaser was not the market value, but the value of the cattle which it could have preserved, either from death or decrease in value because of having insufficient food. Under certain circumstances a ton of hay which cost five dollars might be the means of preserving the life of a horse worth five hundred dollars. If the feeding value of the hay was limited to the price agreed upon for its purchase between plaintiff and defend-

ant, then that would constitute the measure of damages; but, as was said in 2nd Suth. Dam., § 662:

"Under special circumstances known to the parties at the time of contracting, the damages may be enhanced beyond the real or market value of the property. This is the case when the sale is made for some special use of it by the purchaser, and where, in consequence of the non-delivery he, in respect to that intended use, sustains damages beyond its value or the difference between the contract and market price of the property. If a person contracts with another for the sale of personal property and breaks his contract, the proper damages are such as may fairly and reasonably be considered either as arising naturally from the breach of contract, or such as may reasonably be supposed to have been in the contemplation of the parties at the time they made it as the probable result of its breach."

In the absence of any deceit or fraud practiced upon the defendant by the plaintiff at the time of the making of the contract, the measure of damages in a case like this is as has been heretofore set forth. In this case the loss sustained was not the value of the hay, but the damages resulting from the want of it. While a jury might have rendered a verdict for a less amount than the judgment obtained in this case, or a different judge might have found that the damages sustained by plaintiff were less than those found by the trial judge, still, inasmuch as the judgment is abundantly supported by competent testimony, and inasmuch as there were no reversible errors committed in the trial of the cause, the judgment must necessarily be affirmed.

In a former opinion rendered in this case the judgment was reversed and the reversal based upon the sixteenth assignment of error; but, upon a more careful investigation of the record, we find that there

is nothing therein contained upon which this assignment could be predicated. The former opinion will therefore be withdrawn and this filed in lieu thereof.

The judgment will therefore be affirmed.

*Affirmed.*

Judgment *en banc.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT dissent.