(No. 31997.—)

GEORGE M. DONNELLY, Appellee, *vs.* THE PENNSYLVANIA
RAILROAD COMPANY, Appellant.

*Opinion filed March 20, 1952—Rehearing denied May 19, 1952.*

THEODORE SCHMIDT, P. J. CRONIN, and CHARLES F.
WHITE, all of Chicago, (HERBERT C. DE YOUNG, of coun-
sel,) for appellant.

MARION J. HANNIGAN, of Chicago, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff-appellee, George M. Donnelly, recovered judgment in the amount of $65,000 in the circuit court of Cook County, that judgment was affirmed by the Appellate Court, First District, and we granted leave to appeal to this court.

The action is one for damages for personal injuries resulting from an alleged violation of the Federal Safety Appliance Act, and the case was tried before a jury. In the trial court, defendant's motions for directed verdict at the close of all the evidence, and for judgment notwithstanding the verdict or in the alternative for a new trial were denied, and judgment was given for the plaintiff.

Plaintiff had been employed by defendant, the Pennsylvania Railroad Company, for eight years, and was injured on July 11, 1948, at about 10:00 P.M. while in the performance of his duties as a yard foreman at the defendant's Fifty-ninth Street yard in the city of Chicago. The yard is a saucer-shaped area containing a "feeder" track and fourteen branch tracks wherein outgoing trains are assembled, *i.e.,* railroad cars assigned to certain trains are put together on certain tracks to form a train preparatory to departure. Cars must often be uncoupled and moved from one section of cars so that they may be included in another section. In assembling outgoing sections, it is common practice to uncouple a car or cars at the north edge of the saucer, permitting them to roll by force of gravity into the track where other cars allocated to the same outgoing train are located, so that the cars may be easily assembled. Cars are kept from going too far on the tracks by the up-curving southern end of the saucer.

On the ends of each railroad car are coupling devices by which the cars are joined together. These coupling devices, which are so constructed that they will operate on impact, consist of a drawbar secured underneath the

car at one end, and on the other end there is a movable side, the knuckle, and the stationary side, the jaw. When open, the knuckle points almost straight ahead of the car's center line, and when closed leaves a space to hold the knuckle of another car. The drawbar has sufficient side play to allow coupled cars to break around a curve. Buffer springs limit the play, and serve to return the drawbar to its center position. If two jaws are opposed, or a drawbar is too far out of line, no coupling will be accomplished on impact. Cars dropped by gravity from the rim of the saucer may or may not couple automatically, depending on their momentum and the placement of the jaw and the drawbar.

During the time preceding the injury, the plaintiff was assisting in making up a train on track 6. Several cars had been assembled on that track, and the plaintiff went to throw the switch on track 6 so that an engine could get onto the track and pull out the assembled cars. After throwing this switch, the plaintiff walked past the assembled cars with a lantern, as it was night; he observed the coupling between the southernmost car and the one immediately north was apparently made but the coupling between the second and third cars was not made, the knuckles of each of these couplers were closed and the drawbar on the third car was west of the center line about three or four inches. The plaintiff stated that he had no tools to center the drawbar, and had to do it manually. After looking up the track where he could see perhaps a car length ahead, and seeing and hearing nothing, he held onto the grab irons of the second and third cars, put his right foot against the drawbar, straightened out his leg and pushed the drawbar over; that while in this position a part of his body was between the cars; that at that time he was knocked down by a movement of the cars and his right leg was pinned under the first wheel of the third or

north car. This movement of the cars resulted from the engine striking the cars as it came in to pick up the assembled cars.

The defendant bases its appeal on four alleged errors: (1) that the court erred in denying its motions for a directed verdict at the close of all the evidence and its subsequent motion for judgment notwithstanding the verdict; (2) that the plaintiff's negligence was the sole proximate cause of the injury; (3) that the court erred in rulings regarding the admission and exclusion of testimony and evidence; and (4) that the court erred in giving certain erroneous instructions to the jury.

The principal question on this record is whether the defendant is guilty of a violation of section 2 of the Federal Safety Appliance Act, which requires that cars moving in interstate traffic shall be equipped with couplers coupling automatically by impact. That is a question of fact for the jury. The jury having determined that question adversely to the defendant, it remains only for the court to determine, on the defendant's motions for a directed verdict or for judgment notwithstanding the verdict, whether there was any evidence which, standing alone and taken with all its intendments most favorable to the plaintiff, tends to prove such violation. *Lindroth* v. *Walgreen Co.* 407 Ill. 121.

The defendant contends that the test of a violation of this section of the Safety Appliance Act is whether the cars, after a fair trial, will couple automatically by impact, assuming the couplers had been placed in their proper position to effect the coupling; that there is no evidence here to show the couplers were in the proper position to couple automatically by impact and no evidence that an attempted coupling had failed, and consequently no proof of a violation of the act. The defendant has extracted this rule from the case of *Affolder* v. *New York, Chicago & St. Louis Railroad Co.* 339 U.S. 96.

The defendant's theory seems to require that, before any evidence can be considered as tending to prove a violation, the evidence must show the knuckles and drawbar were properly aligned and a futile attempt made to effect a coupling. We do not interpret the cases cited by defendant as so holding. The effect of such a rule would be to require actual proof of the violation before the jury could consider the evidence.

In the *Affolder case* (339 U.S. 96) upon which defendant relies, two cars failed to couple on impact and plaintiff's injury resulted. The defendant contended that the cars failed to couple because the drawbars were not in alignment or the knuckles were not open. The plaintiff recovered a judgment in the trial court and the Court of Appeals reversed this judgment because the trial court had instructed the jury, as the Court of Appeals said, "in effect that the separation of the cars was not only prima facie evidence of a violation from which the jury could infer a failure to properly equip the cars with automatic couplers in proper condition, but actually amounted to an instruction that all that was necessary for the jury to find in order to entitle plaintiff to a verdict * * * was that the cars did not couple—a conceded fact." The United States Supreme Court reversed the Court of Appeals, saying, "We think the Court of Appeals erroneously concluded that the jury could find for the plaintiff only if it inferred 'bad' condition of the couplers and consequent violation of defendant's statutory duty * * *. This was the same error the Court of Appeals for the Seventh Circuit made in *O'Donnell, supra,* [*O'Donnell* v. *Elgin, Joliet & Eastern R. Co.,* 338 U.S. 384,] in an opinion relied upon by respondent in the present case. In subsequently reversing the judgment of the Court of Appeals, we held that the plaintiff did not have to show a 'bad' condition of the coupler; he was entitled to a peremptory instruction that to equip a car with a coupler which failed to perform

properly 'in the switching operation was a violation of the Act, which rendered defendant liable for injuries proximately resulting therefrom, and that neither evidence of negligence nor of diligence and care was to be considered on the question of this liability.' Further we said, 'a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong * * *.' Of course this assumes that the coupler was placed in a position to operate on impact. Thus, if 'the failure of these two cars to couple on impact was because the coupler on the Pennsylvania car had not been properly opened,' the railroad had a good defense. The Court of Appeals also found fault with the charge on the ground that it deprived defendant of this defense. We cannot agree. The trial court directed the jury at least three times that it was for them to determine the reason why the cars separated and specifically called their attention to the testimony of the head switchman, thus emphasizing the possibility that his failure, if any, to open the coupler was the cause of the separation. Likewise, the argument of counsel, both for plaintiff and defendant, clearly reveals that the sole question with regard to this issue was whether, after the couplers were placed in open or proper position, they failed to couple automatically on impact. The jury, by its verdict, resolved the question against the respondent. We think the charge, taken as a whole, sufficiently informed the jury of the relevant legal rules."

We cannot read this quotation from the United States Supreme Court, spoken in affirming judgment for the plaintiff, to require the instant plaintiff to prove that the couplers and drawbars here were in proper position and that the cars failed to couple upon impact before there is any evidence for the jury to consider. It seems to us, rather, that the United States Supreme Court said that proof that the couplers or drawbars were not in proper position would constitute a good defense, but whether the

defendant had proved this defense was a question of fact for the jury.

This seems to be the only plausible interpretation of this language in view of the plain language of the statute, section 2 of the Federal Safety Appliance Act, that "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars," (45 U.S.C.A. sec. 2,) and the numerous decisions of the Federal courts that this requirement is an "absolute" one, requiring performance "on the occasion in question." *O'Donnell* v. *Elgin, Joliet & Eastern Railroad Co.* 338 U.S. 384; *Carter* v. *Atlanta & Saint Andrews Bay Railroad Co.* 338 U.S. 430.

The duty to equip the cars with couplers that couple automatically on impact is an absolute duty on the railroad. Proof of their failure to couple constitutes *prima facie* proof of a violation of the act and shifts the burden of proving that the couplers satisfy the requirements of the act to the defendant railroad. There is not, as defendant apparently contends in the instant case, any burden on the plaintiff to prove that the drawbars and couplers were in proper position and failed to perform after a fair trial.

In *Atlantic City Railroad Co.* v. *Parker,* 242 U.S. 56, an engine had backed into a car and failed to couple. The plaintiff saw the drawhead was out of line, put in his arm to straighten it and was caught, losing his arm. The court there said, "If there was evidence that the railroad failed to furnish such 'couplers coupling automatically by impact' as the statute requires [citations] nothing else needs to be considered," and held that was sufficient evidence to go to the jury. The court there further said "If couplers failed to couple automatically upon a straight track, it at least may be said that a jury would be warranted in finding

that a lateral play so great as to prevent coupling was not needed, and that, in the absence of any explanation believed by them, the failure indicated that the railroad had not fully complied with the law." Applying this reasoning to that portion of plaintiff's evidence in the instant case which was to the effect that the usual side play of a drawbar was $1\frac{1}{2}$ to 2 inches while the drawbar plaintiff attempted to adjust was 3 or 4 inches out of line, so far out of line that a coupling could not be effected, we are of the opinion that that alone would be sufficient evidence to go to the jury for it to determine if the permissible side play was greater than needed and a violation of the statute.

Of course, this was not the only evidence of a violation for the jury's consideration. The evidence showed the physical construction of the yards, so built to permit assembling of cars and to effect couplings thereof by force of gravity; showed effective couplings of other cars on this particular track; showed the usual method of shifting the cars onto the assembly tracks for the purpose of effecting couplings; showed the cars in question here a distance of three feet apart with the knuckles closed and the drawbar too far out of line to effect a coupling. There was also evidence that springs were sometimes used or required, but that none were on these cars, and evidence that the mechanism of the refrigerator car was rusted. It seems to us that there was ample evidence to go to the jury for it to determine if there had been a violation of the act. We further add, at this point, to dispose of another of defendant's contentions, that the jury having found there was a violation under this evidence, we cannot say that such finding was against the manifest weight of the evidence.

The defendant, as we pointed out above, also contended' that the plaintiff's negligence was the sole proximate cause of the injury, that the court erred in rulings regarding the

admission and exclusion of evidence, and that there was error in the giving of certain instructions.

We granted leave to appeal here primarily to review the principal question whether there was any evidence of a violation of the Federal Safety Appliance Act, which we have heretofore discussed. In view of the thorough and able consideration given these other questions by the Appellate Court, evidenced by the majority opinion, the special concurring opinion and the dissenting opinion, we feel justified in disposing of those contentions by saying we have re-examined them in this court and find that we agree with the majority opinion of the Appellate Court that the record contains no prejudicial error, and the judgment should be and is affirmed.

*Judgment affirmed.*