James Welch, Appellee, v. The New York, Chicago and St. Louis Railroad Company, Appellant.

Gen. No. 46,522.

First District, Third Division.

April 20, 1955.

Released for publication May 12, 1955.

Winston, Strawn, Black & Towner, of Chicago, for appellant; Douglas C. Moir, and Edward J. Wendrow, both of Chicago, of counsel.

Henslee, Monek & Murray, of Chicago, for appellee; Francis H. Monek, and John J. Naughton, both of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff brought this personal injury action against defendant under the Federal Safety Appliance Act (45 U. S. C., § 11) and the Federal Employers' Liability Act (45 U. S. C., §§ 51–59). A trial with a jury resulted in a verdict for plaintiff for $65,000, upon which judgment was entered, and from which judgment defendant appeals.

The essential charges of negligence in the complaint, as amended, involve the failure of defendant to furnish a reasonably safe place for plaintiff to work, and failure to furnish an efficient hand brake, in violation of the Safety Appliance Act. That plaintiff was at the time of the accident engaged in performing his duties in interstate commerce is not disputed.

Plaintiff was the brakeman in the movement of the freight cars in question and received his injuries while engaged in what is described as a "drop" or "flying" switch. It is a method for switching a car into an adjoining or transfer track. It is accomplished by the engine first pulling the car to be switched until the desired speed is obtained. The car is then disconnected, the engine speeds up, and after it has passed the switch point the switch is thrown to let the disconnected car run into the switch or transfer track.

The evidence discloses that plaintiff on the day of the accident started to work at Cleveland, Ohio, about 9:00 a. m. He and the crew assigned to the switching of freight cars worked their way westward to Kimball, Ohio, where the accident occurred between 11:15 p. m. and 11:45 p. m. Plaintiff was advised by the conductor of the crew at Avery to make a "flying" switch at

Kimball, and after the switch was made there, the crew was to proceed to Bellevue.

There is evidence that customarily three men are employed in the "flying" switch operation, as described. One is usually stationed at the switch; one on the side of the car, where he pulls the cutting lever, thereby uncoupling the car from the engine; and the third is stationed on the brake platform, where he operates the brake to stop the car being switched at the point desired.

At the time of the accident only two men were used. Hamil, the brakeman, was stationed at the switch. Plaintiff was on the side of the car and disconnected it to enter the transfer track, climbed up the side of the car, then had to go over to the brake platform while the car was in motion. Had three men been employed in the operation, plaintiff would not have had to wait until the car entered the transfer track, but the third man would have done the uncoupling while plaintiff would be up on the platform to work the hand brake near the top of the car.

Just before the start of the "flying" switch operation Hamil, the brakeman, walked west to the "high stand" switch, the one used to transfer the freight car in question. He then saw a gondola car on the transfer track onto which the uncoupled car was to be switched. It appears that the gondola car on the transfer track was approximately 350 feet west of the "high stand" switch being operated by Hamil at the time in question. It appears also that plaintiff saw the presence of the gondola car through the reflected headlight of the engine before the "flying" switch movement was started. However, when the engine passed a point parallel with the standing gondola, the area around the gondola became complete darkness, and none of the crew could see the gondola or anything along the transfer track.

571

After uncoupling the car and passing the switch, plaintiff reached the brake platform, took hold of the hand brake and turned it almost to the point of a complete braking operation. To work the brake he necessarily had to stand on the platform with his back to the area of the gondola. After entering the switch, the car in question swayed considerably from side to side, because of some sharp curves connected with the transfer track. Plaintiff had to hold with one hand one of the grabirons, which was frosted, the evidence disclosing that the temperature was then about ten degrees above zero. He did not complete the braking operation because the freight car on the transfer track had to travel up a slight incline and, as he explained it, had he made the complete braking operation he would not have been able to pass the top of the incline. When he reached the top of the incline and was descending on the other side, he tried to complete the turn of the hand brake to stop the freight car, but the chain on the brake dropped and the brake suddenly "let loose" and became released, and he could not stop the movement of the freight car, and did not have time enough to get off the car. When the freight car was traveling downgrade, it gained momentum and collided with the standing gondola car, resulting in serious injuries to plaintiff—chiefly the loss of an arm. In this connection there is no point made by defendant as to damages.

There was evidence introduced by plaintiff, over objection of defendant, that defendant up to three years before the accident maintained for many years a crossover between the two main tracks, where freight cars were placed or spotted; that it could have been used, had the crossover track remained, to switch the freight car in question, and would have obviated the hazards of a "flying" switch operation. The evidence was received upon plaintiff's theory that the crossover track, when used, furnished a reasonably safe place to work; that when the crossover track was removed

by defendant approximately three years before the accident, and defendant resorted to the use of a "flying" switch, plaintiff was thereby deprived of a reasonably safe place to work.

Defendant urges for a reversal of the judgment that the evidence of the prior existence of the crossover track and its removal was too remote, had no relationship to the proximate cause of the accident, and was prejudicial error. Defendant also argues that plaintiff's claim of an inefficient hand brake on the car in question is against the manifest weight of the evidence, and finds no support in the evidence except his own narrative of what occurred. It argues that the testimony of the experts, relating to the efficiency of the "Miner" hand brake, as well as the testimony of other witnesses, when considered in conjunction with the further fact that after the accident the hand brake in question was tested, and that it worked normally, clearly establishes the improbability of the version given by plaintiff. Upon this basis, defendant asks us to adjudge that plaintiff's claim of violation of the Safety Appliance Act is against the manifest weight of the evidence.

■■ Plaintiff tested the brake in question before the "flying" switch operation was started, while the car was in a standing position. The test made by the defendant after the accident was while the car was in a standing position. In both of these tests there was not involved the fast movement and swaying of the car, as already indicated, with the attending strain that is put upon a brake and the chain connected therewith. The jury could well conclude that such tests referred to, before and after the accident, did not disprove the testimony of plaintiff that when he attempted to complete the braking of the freight car while in motion, the chain dropped and the brake became released. If the jury believed plaintiff's testimony, a prima facie case of an inefficient brake, in violation of the Safety Appliance Act, was established, and defendant's evi-

573

dence did not overcome it. Donnelly v. Pennsylvania R. Co., 342 Ill. App. 556, affirmed 412 Ill. 115. We do not regard plaintiff's claim of the violation of the Safety Appliance Act is against the manifest weight of the evidence.

Upon this question of manifest weight of the evidence we repeat what we said in Schneiderman v. Interstate Transit Lines, Inc., 331 Ill. App. 143, affirmed 401 Ill. 172:

"The determination of such a question in any case involves a grave responsibility, which we are in duty bound to squarely meet and carefully discharge."

We there quoted with approval the holding in Norkevich v. Atchison, T. & S. F. Ry. Co., 263 Ill. App. 1, where it was said:

" 'There are many things which a jury observes on the trial in such case that do not appear from the printed record—the appearance of the respective witnesses, their manner of testifying and a great many other circumstances. They are in a much better position in such case to determine the truth of the matter in controversy than a court of review.' . . . Under the law we cannot disturb the verdict of the jury unless it is clearly against the manifest weight of the evidence. *Manifest means clearly evident, clear, plain, indisputable.*" (Italics ours.)

Defendant also complains of the admission in evidence of a rule adopted by the Southern, Rock Island, Wabash, Illinois Central and Milwaukee Railroads. The rule reads:

"Running switches are prohibited except when they can be made without danger to employees, equipment or contents of cars. It must be known that the track is clear and that switches are in working order and the engine must be run on straight track when practicable."

574

■ This evidence was competent. The theory of plaintiff in offering this evidence was not that the "flying" switch operation was negligence per se, but was proper proof upon the issue whether defendant exercised that degree of care which the law requires, not to unnecessarily expose plaintiff to a dangerous condition, and that such danger was recognized in such a rule by other railroads in the practical operation of their trains. It is also competent proof upon the charge of negligence in the complaint, of defendant's failure to adopt proper safety rules governing "drop" or "flying" switch movements. The competency of such type of proof was recognized in Rouse v. New York, C. & St. L. R. Co., 349 Ill. App. 139 (leave to appeal denied); Schwer v. New York, C. & St. L. R. Co., 161 Ohio St. 15, 117 N.E.2d 696, 700, and cases there cited.

In the light of the proof before us as to the violation of the Safety Appliance Act; the failure of defendant to furnish plaintiff a reasonably safe place to work, under the particular conditions prevailing at the time of the accident in question; the failure to adopt a proper safety rule governing "flying" switch operations, and the negligence springing from allowing a standing gondola car on the transfer track; would we be justified in sustaining defendant's claim that the proof of the former maintenance and subsequent removal of the crossover track was so incompetent and prejudicial as to call for a reversal of the judgment? We think not.

■ The admission of this evidence was error, but we are convinced that it was not prejudicial error requiring a reversal of the judgment. We do not think the jury was misled or prejudiced by this evidence. On the contrary, it could be reasonably inferred that such evidence was more beneficial to the defendant than harmful. The evidence would lend support to defendant's position that the "flying" switch operation, which was not negligence per se, was the only practical way available to it in which to switch the car in question;

whereas, if the crossover track had then existed and was not made use of, the jury could more readily conclude that defendant was guilty of negligence in not using the safer method available to it.

In Milis v. Chicago Transit Authority, 1 Ill.App.2d 236, we said (p. 243) as to the likelihood of the jury being misled:

"Whether it [the instruction] actually misled the jury is not susceptible of legal proof. To some degree it is conjectural whether it may have misled the jury."

Lastly, defendant complains of the refusal to give instruction No. 13 tendered by it. The instruction reads:

"The Court instructs the jury that, if you find from the evidence that the car on which plaintiff was riding was equipped with efficient hand brakes and that the sole reason that the plaintiff was unable to stop it before it collided with the standing car is that he failed to operate properly the hand brake, then you should find the defendant not guilty of the charge that defendant violated the Safety Appliance Act."

■ ■ This peremptory instruction was properly refused, because there was no evidence upon which to base any conclusion that plaintiff failed to operate properly the hand brake. There was no evidence that there was any other method of operating the hand brake than the one employed by plaintiff. Furthermore, plaintiff's given instructions placed the burden upon plaintiff to prove the inefficient condition of the brake, and that it was the proximate cause of the accident. Instructions must be based upon evidence.

The defendant had a fair trial, and the judgment is affirmed.

Affirmed.

KILEY, P. J. and LEWE, J., concur.