## Ray C. Carter, Appellee, v. Peoria and Pekin Union Railway Company, Appellant.

### Gen. No. 9,052.

Opinion filed September 24, 1936.

E. E. HORTON and JOSEPH A. WEIL, both of Peoria, for appellant.

MANSFIELD & COWAN, of Peoria, and H. H. PATTERSON, of Chicago, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
The original declaration in this case was filed on August 6, 1930, and consisted of three counts. In the

first and second counts it was alleged that on January 11, 1930, the defendant railway company was a common carrier engaged in interstate commerce and that plaintiff was employed by the defendant as a switchman engaged in interstate commerce. It was further averred that the defendant unlawfully hauled and permitted to be used a railroad car upon which the plaintiff was at work when said car was not equipped with an efficient hand brake and that by reason thereof, the plaintiff in the due course of his employment, while riding upon said car, attempted to set the hand brake in order to control the movements of said car, but that the hand brake was weak, worn, bent and inefficient and would not hold, but gave way, causing the brake wheel to fly backward and spin around, thus causing the plaintiff to be thrown from said car to the ground, whereby the plaintiff sustained the injuries to recover for which this suit was instituted. During the course of the trial the third count was dismissed. The defendant filed two pleas, first, the general issue and second, a special plea alleging that the plaintiff was "not of right" an employee of the defendant at the time he received his injuries within the meaning of the Federal Employers' Liability Act, Ill. State Bar Stats. 1935, ch. 114, ¶ 321 *et seq.*, and the Safety Appliance Act, Ill. State Bar Stats. 1935, ch. 114, ¶ 140 *et seq.;* that the plaintiff when he applied for employment on December 9, 1929 represented that he had never before been injured and had not consulted any physician for physical disability or injury within a period of five years prior thereto, whereas the facts were that while previously employed he had been seriously and permanently injured and had consulted a physician within said five-year period for serious injuries; that plaintiff's actual condition constituted adequate cause for the rejection of his application for employment but that the defendant confiding in the false and fraudulent representations of the plaintiff

permitted him to occupy the position of switchman, which status was at all times wrongful and a fraud upon the defendant and a peril to its other employees. After the issues had been made up, a trial was had, resulting in a directed verdict in favor of the defendant, given by the trial court at the close of all the evidence. Upon an appeal to this court, we held that the evidence upon the issue raised by the special plea required the submission of that question to the jury and reversed the judgment and remanded the cause for a new trial. *Carter v. Peoria & Pekin Union Ry. Co.,* 275 Ill. App. 298. Thereafter the cause was again tried, resulting in a verdict in favor of the plaintiff for $4,000, upon which judgment was rendered and the record is again before us for review.

It is insisted by appellant that the trial court erred in not directing a verdict in its favor at the close of all the evidence, that it erred in refusing proper instructions and finally that the verdict is manifestly against the weight of the evidence.

The evidence discloses that on December 9, 1929, appellee applied to appellant for work, submitted to a physical examination and on the same day went to work as a switchman in the East Peoria yards of appellant. This yard is a gravity yard consisting of two divisions designated as A and B and separated by lead tracks. In division B there were 41 tracks connected to the lead track by switches and all extending in a northerly direction on a down grade from the lead track and a loaded car, after leaving the lead track, would run of its own momentum through the yard into Washington street in East Peoria. On the evening of January 11, 1930, appellee went to work at 11 o'clock p. m., his regular time. Earlier in the evening the car in question came into the switch yard upon an Illinois Central freight train and was en route from Taylor, Kentucky to Rock Island, Illinois. In this train there

were 40 cars and about midnight 17 of these cars were on the B-yard lead track. The car in question was a steel, open top, battleship construction coal car loaded with coal. It was the fifteenth from the engine and the first movement of the crew was to cut off the last, or seventeenth, car from the engine into track B-36. Carter threw the switch for this car and got on the car and set the hand brake and the car stopped. Cecil Clark was foreman of the switching crew of which Charles Harness and appellee were members, and according to the testimony of Clark and Harness, the next movement after switching the seventeenth car into track B-36 was to switch cars 15 and 16 into track B-37. Harness testified that he cut these two cars near No. 30 switch and they proceeded along the lead track and entered track B-37. Appellee testified that he got on the rear end of the car in question between 100 and 150 yards down the track after it had left the lead track; that there was no other car coupled to it; that it was his duty to set the brake so that it would stop and so that other cars which might come upon that track would stop when they came in contact with it. Appellee further testified that the hand brake upon this coal car was on the rear end and the brake wheel was of steel, 12 or 14 inches in diameter and about eight or ten inches above the top of the car; that the brake rod or shaft extended from the top of the car to the bottom and the bottom is connected with a chain which is attached to the brake shoes, so that when the chain is wound it tightens up and sets the brakes; that there was a platform at the end where appellee stood operating this brake and this platform was about eight inches or ten inches wide and between two and one-half and three feet in length. Upon the top of this platform was a dog and ratchet and the ratchet was attached to the brake shaft and the dog was attached to the footboard, the ratchet wheel being about six or

eight inches in diameter. Appellee further testified that he had his lantern on his left arm and a wooden club about two and one-half feet long in his right hand, which was furnished him by appellant, that he tightened the brake wheel as tight as he could with his hands and then put the club in between the spokes of the brake wheel and pulled it from the left to the right about a three-quarter turn, in order to further tighten the brake and had his right foot set against the dog and shoved it in but the dog did not engage the teeth of the ratchet and the brake wheel was released and the club came around and hit him on the left arm, and the brake wheel hit him on the left shoulder and he was knocked off of the car, and landed in the middle of the track while the car proceeded down the track some distance. He further testified that he observed that the brake did not slacken the speed of the car as he tightened it and although he was ''knocked out'' temporarily he recovered in a few minutes and then picked up his club and lantern, walked back some distance and met Mr. Clark, his foreman. He further testified that before he met Clark, he observed the car and noticed that it had a bent brake shaft and he reported this condition to Mr. Clark; that after he was thrown from the car, he realized that he was hurt in the left arm, in the left leg and in the back between his shoulders, but he continued working throughout the night and left at his regular quitting time, which was 7:00 a. m. the following morning. He further testified that about four o'clock in the afternoon of that day, after having spent most of the day at his home and in bed, he went to the yard office of appellant and told them that he would be off that night and about 11:00 o'clock that evening he was taken to the Methodist Hospital in Peoria.

On the following morning, Dr. Meloy, appellant's physician, examined him and testified that appellee complained of pain in his shoulder, neck and back, but in locating his pain he was vacillating; that he had lost

control of his emotions, would swing his arms, talk incoherently and would not stay in bed; that he diagnosed his case as hysteria and prescribed a sedative, hot applications and a massage. Dr. Meloy further testified that his examination of appellee disclosed no black or blue spots, no marks, scratches or abrasions of any kind and no swelling or evidence of any bruise on his back, but there was a slight swelling on the elbow; that at the time he examined him in connection with his application for employment on December 9, 1929, he noticed a not abnormal deviation of his spine and observed the same condition on the morning following his arrival at the hospital. Dr. Meloy further testified that he saw appellee every day while he remained at the hospital, which was until January 28, 1930, and that for the first three days his condition remained the same, but thereafter he regained control of his emotions and after appellee left the hospital he reported to Dr. Meloy many times but at no time was the physician able to discover anything the matter with him other than that he was hysterical for the first few days while in the hospital. Appellee testified that when he left the hospital he could hardly use his left arm, shoulder or left leg and received no further attention from Dr. Meloy. He further testified that since the accident he had done no manual labor; that the condition of his back and shoulder was worse at the time he testified in 1935 than it ever had been; that previous to the time of the accident he had not had any trouble with his back, leg or shoulder, but since then he could not lift anything or walk any distance.

Charles Harness testified that after the two cars had been switched into track B-37, he did not again see appellee until all of the remaining cars had been switched out; that appellee came up near switch No. 30 and got on the footboard of the switch engine; that he then said that he was setting the brake on a car in track 37 and that the dog slipped from the ratchet,

spraining his arm and shoulder; that he said nothing about being knocked off the car or about a bent brake shaft nor made any complaint of pain in his back, had no snow on his clothes, bore no evidence of any injury and continued to work in his usual manner the rest of the night.

Cecil Clark, the foreman of appellee's switching crew, testified that he observed the fifteenth and sixteenth cars as they were cut and from the lighted lantern in appellee's hand he knew he got on the rear car; that he saw the cars stop and later appellee came up to the lead track, got on the footboard of the engine and told this witness that in setting the brake the club slipped out of his hand and the dog slipped out of the ratchet and the club came around and hit him on the shoulder. He said nothing about being knocked off the car, did not complain of his back, worked the rest of the night—that is from about one o'clock a. m. until seven a. m.—was able to do his work, did do it, appeared to witness to be all right and the witness observed no snow on his clothes or anything unusual in his appearance.

The evidence further discloses that in the written application for employment and in an oral statement made at the same time to the chief clerk of appellant's superintendent of employment, appellee stated that he had not consulted any physician or surgeon for sickness, injury or disability of any nature during the preceeding five years and had not been sick within that period of time. In his written application, he listed the C. B. & Q. Railroad, the Terminal and the Frisco as roads with which he had been employed. He stated incorrectly the dates when he entered and left the service of these railroads and falsely stated in his application that he was born on September 15, 1900, while he admitted upon the trial that he was born in 1892. In his application he stated that he entered the

service of the C. B. & Q. Railroad on August 4, 1924, and left its service on November 22, 1927, but the facts are and he so testified that he entered the employment of this railroad in 1922 and continued until November, 1926, at which time he was injured. He stated, at the time he applied for employment with appellant, that he had not consulted a physician and had not been sick at any time during the preceding five years. This was not true. He had consulted a physician and had been sick during the preceding five-year period and on November 22, 1926, he was injured while in the employ of the C. B. & Q. Railroad and had a claim against that company, which he settled without an attorney for a substantial sum. He testified he was unable to state the amount the company paid him, although he said it was more than $6,000 but not as much as $8,000.

Appellee testified that in 1920 he suffered a heat stroke and the evidence is further that for 10 years prior to the occasion in question appellee suffered from a nervous affliction, referred to by the several physicians who testified as hysteria. The lay witnesses who testified that they had observed appellee at these times spoke of them as seizures, attacks or spells, and to these appellee would be subject at irregular periods. At these times appellee would complain of pain in the back of his head and neck, he would lose consciousness, talk incoherently and wave and throw his arms. Medical treatment consisted of a hypodermic of hyoscine, morphine and caffeine, which, when administered, relieved the patient, quieted him down and put him to sleep. Dr. Thompson was appellee's home physician at Cypress, Illinois, and he was called by appellant as a witness and he testified that he had treated appellee on many occasions for this affliction and in between the attacks he prescribed for him and gave him luminol and atrophine. The last attack which this witness recalled was in 1928, while appellee was working on a

school building at Cypress. In April, 1925, four years before appellee went to work for appellant, and after one of these attacks, appellee was examined by Dr. Thompson and at the request of appellee's father he was taken to Dr. Wolf of Cairo, Illinois, who gave him a complete physical examination and the examination of these physicians disclosed a slight deviation of the spine, but they found no dorsal dislocation. During the years 1924 and 1925 Dr. Thompson testified that he treated him on the average of five or six times each year and in 1926 Dr. Thompson treated appellee for an injury to a testicle. He further testified that between 1920 and 1925 he saw him very frequently.

Dr. August Heller of Centralia, Illinois, testified that on December 9, 1926, he was division surgeon for the C. B. and Q. Railroad and that appellee came to his office in Centralia and advised him he had been injured while switching cars on November 21, 1926, and complained of pain in the groin and pelvic regions. Dr. Heller examined appellee and found his right testicle badly swollen and a deviation in the alignment of the spinal processes and sent him to St. Mary's hospital in Centralia, intending to take X-ray pictures, but appellee walked out of the hospital the same evening before Dr. Heller arrived and Dr. Heller did not see him again until the trial of this cause.

Dr. John W. Connell, an experienced physician, surgeon and X-ray Roentgenologist who was connected with the Peoria hospital in 1930, took six X-ray pictures of appellee at the hospital at Dr. Meloy's request on January 14, 1930. These pictures were admitted in evidence and with other X-ray pictures taken by Dr. Pease, whose testimony is hereinafter referred to were read to the jury by Dr. Connell. None of them, according to the testimony of Dr. Connell, disclosed any fracture or evidence of any fracture of appellee's shoulders, chest, ribs, vertebrae or processes. All the

pictures disclosed that the spine of appellee was not dislocated but did show a simple deviation from an absolutely straight spine. In the opinion of the several witnesses, this condition is present in about 50 per cent of the people and in the case of appellee was of long standing. Dr. Magee and Dr. Goodwin, both experienced in X-ray work, testified for appellant and after having examined the several X-ray pictures of appellee submitted in evidence by appellant and by appellee stated that they were unable to find, from an examination of any of the pictures, any evidence of any fracture or dislocation. Dr. Sutton and Dr. Bellas also testified on behalf of appellant and stated that on February 17, 1931, they had each given appellee a thorough physical examination and they found nothing wrong with him and no evidence of any injury.

On behalf of appellee, Dr. L. W. Pease testified that appellee came to his office in Chicago and there, at the request of appellee's counsel, he examined him and took some X-ray pictures of him on the 6th and 11th days of February, 1930. According to the testimony of this witness, he found appellee normal except for some swelling over the fourth, fifth, sixth and seventh dorsal vertebrae and some swelling over the first lumbar vertebrae; that the pictures he took disclosed a fracture through the spinal end of the seventh rib. Dr. C. B. Farnum also testified for appellee to the effect that he examined appellee at his office in Peoria on April 15, 1933, and his examination disclosed a slight deviation in the middle portion of the chest region in the spine. He read Exhibit C, which was one of the X-ray pictures taken by Dr. Pease, and he stated that it disclosed a fracture of the seventh rib close to the spine.

Counsel for appellee argue that there was no testimony offered to contradict the testimony of appellee as to the manner in which the accident occurred and

that the facts in the case of *Anderson v. Chesapeake & Ohio Ry. Co.,* 352 Ill. 561, are identical with the facts in the instant case and under that authority this judgment should be affirmed. In the *Anderson* case it appeared that a car had been cut off from the locomotive and the plaintiff got on the brake step to set the hand brake and thereby control the car's momentum. Because of the fact that the dog on the ratchet wheel was loose, he had to push it in to hold it in place and when he turned the brake wheel around to a certain point it would suddenly stop and thereby prevent the brake shoes from engaging the wheels of the car. Anderson was therefore unable to check its speed and it collided with other cars standing on the switch and as a result he was thrown and received serious injuries. In the *Anderson* case there was proof to the effect that the brake did not work because the dog on the ratchet wheel was loose, that its failure to work was the proximate cause of the accident and injury and that therefore there was a violation of the Safety Appliance Act, Ill. State Bar Stats. 1935, ch. 114, ¶ 140 *et. seq.,* which required the brake mechanism to be efficient and in good working order. In the instant case it is true that appellee testified that the top of the brake staff was bent so badly that the wheel would just clear the top of the car, but if this was true, there is no connecting up of this fact with any failure of the brake to work efficiently. Furthermore in the *Anderson* case the physical facts were that the brakes did not hold and as a result thereof there was a collision and this demonstrated their inefficiency, while in the instant case the physical facts disclosed that the brakes produced the expected results.

*Collins v. Great Northern Ry. Co.,* 181 Minn. 125, 231 N. W. 797, was a case where the facts were similar to those in the instant case. There the plaintiff was a switchman, riding a loaded box car in the nighttime which was traveling by gravity to a particular track.

He testified that as he started down the incline he tightened the hand brakes, but they did not take hold; that he used a club in the brake wheel and as he gave one last reef on the brake and on the club, something let go and he fell. The evidence in the *Collins* case disclosed that after the accident the brakes were found to be tightly set and then worked properly. In the course of its opinion the court said: "The claim that the brakes were inefficient must be proved. It cannot rest on theory alone. The record leaves the cause of the accident uncertain. The most favorable view for plaintiff is that it rests in conjecture as to whether it was inefficient brakes, the fault of the plaintiff, an unaccountable or unavoidable accident. The brake club may have slipped. The cause of the accident must be proved. Unless the cause is shown affirmatively, there can be no recovery." So in the instant case appellee, under the provisions of the statute and under the allegations of his declaration, must prove that this car was not equipped with efficient hand brakes.

In the instant case the evidence discloses that the purpose of appellee's action in operating the brake on this coal car was to set the brakes and thereby stop the car. The reason why the car should be stopped was to prevent it from running off the switch track into Washington street and also to have, on this switch track, a car with tightly set brakes so that other cars might be sent against it without the necessity of any switchman riding such additional cars. Appellee himself testified that the car stopped about one hundred yards down the track from the place where he was thrown off and that as soon as he recovered consciousness he walked down where it was and saw that it had a bent brake staff. The uncontradicted evidence is that other cars were kicked in on this switch that night and that it held them. Here the physical facts are that at a time when appellee insists that the brakes had released, they functioned. The prawl or dog did hold

in the ratchet wheel and this heavily loaded coal car not only stopped on a down grade but was so firmly braked that other cars coming in contact with it did not cause it to resume its journey down the switch track. The evidence in this record is further that an inspection was made of this car when it came into the Peoria yards a couple of hours prior to the time appellee went to work on the evening in question and two witnesses who examined the car testified that there was no mechanical defect in the brake equipment, that neither the brake staff nor wheel was bent and that it operated efficiently. The records of appellant disclose that no repairs were made on this car while in Peoria upon this occasion and O. M. Pierson, who inspected this car at Galesburg when it arrived there from Peoria on the following day, testified that he set the brake on this particular car, examined the brake shoes and observed that there was nothing wrong with the brake equipment, but that it released properly and worked efficiently and there was no evidence of any recent repairs having been made.

In our former opinion we said that the fact that appellee gave appellant the correct name of the several railroads for which he had worked tended to refute the presumption that he had any deliberate intent to deceive appellant. Upon the second trial, the record of which we are now reviewing, there is evidence that in addition to the written application made by appellee, he made oral statements to the chief clerk of the superintendent's office of appellant and to the examining physician that he had consulted no doctors and had had no illness of any kind during the preceding five years. Appellee in rebuttal denied that he had so told Mr. Keeler, the chief clerk, but did not contradict the testimony of the examining physician. In our former opinion we commented upon the fact that appellee passed the physical examination and cited with

approval *Powers v. Michigan Cent. R. Co.*, 268 Ill. App. 493, and held that upon a motion to direct a verdict the trial court has no power to weigh and determine the preponderance of the evidence and that where there is legitimate evidence tending to prove a cause of action it is the duty of the trial court to submit the case to a jury. We adhere to what we there said and are of the opinion that in view of our former decision the trial court properly refused appellant's peremptory instruction. We are of the opinion, however, that the verdict is manifestly against the weight of the evidence.

Under the provisions of the Safety Appliance Act, Ill. State Bar Stats. 1935, ch. 114, ¶ 140 *et seq.*, if the brake mechanism upon this coal car was efficient and in good working order, appellee could not recover for a violation of that act. *Anderson v. Chesapeake & Ohio Ry. Co., supra.* Appellee was the only one who testified how the accident occurred. When he reported it to Clark, his foreman, he said the brake club slipped out of his hand and this testimony of Clark is not denied by appellee. If what he said to Clark was true and if the brake club did slip out of his hand, the accident was not due to an inefficient brake as charged and there can be no recovery. We have read this record with care and have set forth enough of the evidence to show that the record is replete with instances which disclose appellee's disregard for the truth. His testimony is also refuted by the physical facts as we have shown. The verdict of the jury is manifestly against the weight of the evidence and the trial court erred in not setting aside that verdict. The judgment appealed from will therefore be reversed and the cause remanded, and in view of this conclusion it will be unnecessary to consider the remaining contention of appellant.

*Reversed and remanded.*