Walter W. Virgil, Appellee, v. New York, Chicago, and
St. Louis Railroad Company, Appellant.

Gen. No. 45,668.

Opinion filed June 9, 1952. Rehearing denied June 20, 1952. Released for publication June 30, 1952.

WINSTON, STRAWN, BLACK & TOWNER, of Chicago, for appellants; DOUGLAS C. MOIR, GEORGE B. CHRISTENSEN, and EDWARD J. WENDROW, all of Chicago, of counsel.

FUERST & FUERST, and SCHWARTZBERG & BARNETT, all of Chicago, for appellees; DAVID ALSWANG, and MARK T. BARNETT, both of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Defendant appeals from a judgment in a personal injury action based on alleged violations of the Federal Employers' Liability Act and the Safety Appliance Acts.

Plaintiff, a switchman, was injured in a switching operation in LaFayette, Indiana, June 11, 1948. He charges that he attempted to set the air brake on a private car (Business Car 6, a passenger car used 'by the railroad superintendent in traveling over the road) by opening an angle cock while holding the air hose in his left hand, in accordance with the established practice; that the angle cock was worn, dirty and out of alignment and worked very hard; that he exerted all his force on the angle cock, it opened all the way, causing the air to rush through the air hose with such unusual force that the hose struck plaintiff's arm, throwing him to the ground and causing the injuries complained of; that defendant failed to fulfill its statutory duty as required by the Safety Appliance Act in that it failed to equip and maintain its said car with efficient train air brakes and was careless and negligent in failing to make reasonable inspection of and to repair said brakes, their parts and appurtenances, and in hauling or permitting to be hauled on its road, cars which were equipped with inefficient air brakes, their parts and appurtenances. After a trial, in which the jury disagreed, plaintiff amended the complaint by adding the charge that at the time of his injury there was in force and effect a rule of the Interstate Commerce Commission applicable to said private car requiring that "Every passenger train car shall be equipped with an efficient hand brake which shall operate in harmony with the power brake thereon"; that defendant carelessly and negligently failed to maintain upon said car an efficient hand brake as required by the rules of the commission. On a second trial the jury returned a general verdict of guilty,

283

assessed plaintiff's damages at $40,000 and answered "Yes" to a special interrogatory, reading: "Was the angle cock which the plaintiff was using at the time of the occurrence on June 11, 1948 defective?" Judgment was entered. Defendant's motion for a new trial was overruled. It appeals.

In a passenger train air system there is an air line running lengthwise under the frame of each car; an angle cock, or valve, on each end of the air line securely fastened to a rubber and fiber air hose about 3 feet in length which is coupled by a metal device to the air hose of the engine or adjoining car, forming a continuous air line from the engine to the end of the train and enabling the engineer to control the speed of the train and to stop it, in the following manner: Compressed air (110 pounds to the square inch) is forced from the engine into a cylinder in the air line under each car. If the pressure on both sides of the piston in the cylinder is the same, the brakes are released and inoperative. They are partially applied or fully set by reducing the air pressure and causing the piston to move, operate a series of levers and force the brake shoes against the wheels of the cars. The brakes are again released by equalizing the pressure on both sides of the piston by increasing the pressure in the air line.

When a car has been disconnected from a train or engine its air brakes can be set by opening the angle cock and reducing the air pressure in the air line. A sudden opening of the angle cock will force the air through a loose or unattached air hose with such force that the hose will whip or fly around. To avoid danger from this uncontrolled movement of the air hose the person opening the angle cock either holds the air hose with his left hand or presses it against his leg. There is a dispute between the parties as to which is the proper practice. There is evidence tending to sup-

port the claims of each. Gradual leaks or seepage in the air system may exhaust or equalize the pressure in the cylinder in from three hours to three days, thereby releasing the brakes. To hold a car set on an incline when the air leaks off, the hand brake is applied. The air and hand brakes are set by forcing the same brake shoes against the wheels of the car. By setting the hand brake as tight as possible by hand and then opening the angle cock to set the air line in emergency, the brakes are tighter than they were set by hand. This loosens the chain on the hand brake and permits tightening it a notch or two more by hand.

Business Car 6 (hereinafter called car 6) is a passenger car with open platforms, enclosed by an iron fence or railing at each end. It had standard air-brake equipment and a hand brake on each platform. It was brought into the railroad yards at LaFayette, Indiana, where plaintiff was working on June 8, 1948. On the morning of June 11th the car was moved by a switching crew of which the plaintiff was a member, to track 16 so that it could be attached to train 22, an eastbound passenger train. In this movement plaintiff was injured. He was the only eyewitness to this occurrence. He testified that he first saw the car two or three days before the accident. His crew moved it to the number one team track opposite the depot. This track slopes slightly down to the west. On each of the two days following, the crew put air in the car and set the brakes so the car would stand. On June 11th his crew spotted the car on track 16 where there was a slight downgrade. After the engine pulled away in a switching movement, to get around car 6 and couple to the west end, plaintiff got hold of the air hose on the east end of the car with his left hand and started to open the angle cock. He was in a crouching position. He jerked real hard and the angle cock did not come open, and of a sudden the air hose came up and spun around and

hit him on the wrist. He jumped back to get out of the way and fell over the rail on his back on the ground. On cross-examination he said that in working with car 6 he changed the position of the angle cock (opening and closing it) ten times; that the eleventh time the accident happened; that when he started pulling on the handle it might have opened a little; that he gave it a second jerk and it came completely open, the air hose flying out of his hand. He testified further on direct examination that when he opened the angle cock prior to the accident it worked hard and he had to jerk it to get it to start; that on the second day he looked at the angle cock, that the valve stem was down about a quarter of an inch in the handle and had marks like it had been hammered; that the handle was bent slightly to the right about a quarter inch out of line.

As said in *Williams v. New York Cent. R. Co.*, 402 Ill. 494, ''In actions under the Federal Employers' Liability Act the rule for measuring the sufficiency and amount of evidence necessary to justify the submission of the case to the jury is that established by the Supreme Court of the United States.'' (Citing cases.) In *Myers v. Reading Co.*, 331 U. S. 477, an action based on the Safety Appliance Acts, the efficiency of a hand brake was involved. The court held that there were two recognized methods of showing the efficiency of hand-brake equipment—adducing evidence to establish some particular defect or showing a failure to function, when operated with due care, in the normal, natural, and usual manner, even though it worked efficiently both before and after the occasion in question. See also *Hannigan v. Elgin, J. & E. Ry. Co.*, 337 Ill. App. 538, 550. It is therefore immaterial, on defendant's motion for a directed verdict, whether there is any evidence of probative value tending to prove the specific defects in the angle cock claimed by plaintiff if there is testimony tending to prove that the

angle cock failed to function when opened in the usual manner on the occasion in question. The testimony of plaintiff tended to prove the latter fact and required submission of the case to the jury. The court properly refused to direct a verdict in favor of the defendant.

█ Defendant further contends that the court erred in giving plaintiff's instruction No. 1 which in substance told the jury that the rules of the Interstate Commerce Commission promulgated under the Safety Appliance Act (1910) required defendant to maintain on car 6 an efficient hand brake which would operate in harmony with the power brake thereon, and if they believed from the preponderance of the evidence that "the angle cock in question was a part and appurtenance of the air brake system, and that it was defective and inefficient and that such defect or insufficiency, if any, prevented the hand brakes upon the said car from working in harmony with the power brakes," and that such condition caused plaintiff's injuries, that plaintiff was entitled to full damages for his injuries notwithstanding the plaintiff was guilty of contributory negligence. The instruction states a rule of liability and of damages to be awarded. The rule of the Interstate Commerce Commission requires the maintenance of an efficient hand brake which will operate in harmony with the power brake on the car. The amendment to the complaint is based on this rule. The instruction is framed on the assumption that an efficient hand brake was prevented from working in harmony with the power brake because of a defect in the air-brake system. Furthermore, there is no evidence that a defective angle cock might or could interfere with the operation of the hand brake. Neither is there any evidence that on the day of plaintiff's injury he used or intended to use the hand brake. The instruction has no basis in law or fact. Giving it is reversible error.

██ Defendant introduced the testimony of many witnesses that the angle cock in question was in good order; that the valve stem was not depressed nor the handle bent; that the angle cock worked properly; that it was removed from the car October 5, 1948; that its appearance and condition then and when offered in evidence on the trial were the same as at the time of plaintiff's injury. It was received in evidence. At the close of defendant's evidence plaintiff moved to strike all testimony on behalf of defendant as to the manner in which the angle cock worked and its appearance after June 11, 1948. The court did not grant the motion as made but struck the testimony as to the manner in which the angle cock worked and its appearance after June 30, 1948, and instructed the jury to disregard such testimony. Plaintiff then testified in rebuttal that the angle cock received in evidence was different from the one involved in the accident in that the top of the latter was all battered, there was a nick in the handle and the handle was slightly bent to the right, and further, that the valve stem in the angle cock received in evidence was darker than the valve stem of the angle cock received in evidence on the first trial. The angle cock is what is termed ''demonstrative'' or ''real'' evidence, and is the ''most convincing and satisfactory class of proof.'' 20 Am. Jur., Evidence, page 600; Jones, Commentaries on Evidence (2nd ed.), vol. 3, page 2518. The exhibit was properly received in evidence. *Staver Carriage Co. v. American & British Mfg. Co.,* 188 Ill. App. 634, 647; *Geiken v. Chicago, G. W. R. Co.,* 289 Ill. App. 45, 48. There is nothing in the record to indicate why June 30, 1948 was selected as the dividing line between competent and incompetent testimony as to the operation and appearance of the angle cock. The action of the court deprived the exhibit of all value as the angle cock used by plaintiff and in the same condition as to operation and appear-

ance as on June 11th when plaintiff was injured. The serious effect of this ruling is obvious. It too is reversible error.

For these reasons the case must be reversed and remanded for a new trial. Because the case must be tried again, we do not pass on defendant's contention that the verdict is against the manifest weight of the evidence and the damages awarded are grossly excessive.

*Reversed and remanded.*

BURKE, P. J. and FRIEND, J., concur.