Mozelle Selby, Executrix of Estate of Morris C. Selby, Appellee, v. Chesapeake and Ohio Railway Co., Appellant.

**Gen. No. 46,826.**

First District, Third Division.
September 26, 1956.
Rehearing denied November 7, 1956.
Released for publication November 8, 1956.

Erwin W. Roemer, of Chicago, for appellant; Erwin W. Roemer, and Joseph P. Carr, both of Chicago, of counsel.

Henslee, Monek & Murray, of Chicago, for appellee; Walter N. Murray, and John J. Naughton, both of Chicago, of counsel.

JUDGE LEWE delivered the opinion of the court.

This is an action under the Federal Employer's Liability Act (45 U.S.C.A. § 51) and the Safety Appliance and Equipment Act (45 U.S.C.A. § 11) for injuries to, and the subsequent death of Morris C. Selby, defendant's brakeman, alleged to have resulted from the failure of a hand brake to work efficiently. There was a verdict and judgment in plaintiff's favor for $25,000. Defendant appeals.

Plaintiff's decedent, Morris Selby, was injured on June 19, 1950 while engaged in riding cars off the hump in defendant's yards at Stevens, Kentucky. On that day freight cars were being taken from Yard 3 and shoved eastward over the hump to Yard 4 which was the distributing or "outgoing yard." This yard had 12 tracks. Located in the center of these tracks

was a motor track used by a motor car which transported brakemen back to the apex of the hump. North of the motor car track were tracks numbered 7, 8, 9, 10, 11 and 12; the other tracks numbered 1 to 6 were located south of the motor track.

Shortly before he received the injury here complained of, Selby boarded the east end of two cars moving eastward on track 9 in Yard 4 at a point east of the apex of the hump. Track 9 in Yard 4 was used for cars going to the repair shop.

The hand brake in question consisted of a hand wheel and a shaft extending approximately two feet above the roof of the car. On the top of the car there is a ratchet wheel engaging a pawl. In order to operate the hand brake, the pawl must be disengaged by the brakeman's foot so that the brake wheel and shaft can be turned by hand. While the pawl is thus disengaged, a brake club, about 20 to 24 inches in length, is inserted through the spokes of the wheel and braced against the shaft. Pressure on the brakes is exerted by the brakeman pushing the brake club with his left hand and simultaneously pulling at the wheel with his right hand.

Plaintiff produced no eyewitnesses to the alleged occurrence. Three witnesses testifying in behalf of defendant said that they saw Selby make the particular ride at various points between the hump and where the cars were stopped on track 9. Defendant's witness Keating testified that from his position 600 feet away he saw Selby from the back bring the cars to a stop, dismount and walk from the cars to the motor car track. The only unusual fact he observed was that Selby stopped the cars just after they entered track 9. The general practice was for the brakemen to ride the cars well onto the track, leaving sufficient clearance for cars that might later be humped onto the same track.

Defendant's witness Moenning testified he saw Selby operating the brake as the cars came onto track 9. These cars were not, as normally done, ridden up to a car which had been previously switched to track 9, but instead, Selby stopped the cars short of this third car. The third defense witness who saw Selby ride the cars said that Selby dismounted and "looked" at the cars after they had been brought to a stop.

The evidence shows that after bringing the cars to a stop, Selby went over to the motor car track for a return ride to the hump, and that since the motor car was crowded, he stood on the running board, holding onto grab irons on either side. Plaintiff's witness Coates testified that after the motor car had moved a short distance, he noticed Selby ". . . just sort of roll over sideways . . . and then I noticed there was something wrong." Coates held Selby so that the latter would not fall from the motor car. Coates did not observe any markings on Selby who was wearing a cap and an overall jacket at the time. Selby "pushed up" his glasses but Coates did not see if the glass was broken. Coates also testified that though there was much noise he heard Selby mumbling something that sounded like "bad brake." Other witnesses said that after Selby's removal from the motor car they noticed that there was blood trickling from his mouth. When the motor car stopped, Selby, unconscious, was placed on a stretcher to be taken to the hospital. While on the stretcher Selby rallied somewhat, raised up, and asked what had happened.

About noon on the day of these occurrences, Selby was visited by his wife and daughter at the hospital. They testified he had a red swollen spot on the left side of his head, that his glasses were broken and bent, and that his leg and arm had "marks" on them.

As grounds for reversal, defendant urges that there was failure of proof that the hand brake was defective

or failed to function efficiently; that there was a failure to prove causal connection between the accident and an inefficient hand brake; and that plaintiff failed to prove a causal connection between injury or death and an inefficient hand brake. Defendant insists that the court erred in denying its motion for a judgment notwithstanding the verdict.

Selby's medical history was complex. He suffered a mishap in 1939, when he injured his leg and back. In 1942, he was injured when he fell from a moving engine and struck his head. In 1949, Selby again struck his head while at work. About two hours after the 1949 incident, Selby struck his head a second time at his home. After both the 1942 and 1949 occurrences, Selby had a convulsive attack, the cause of which was undetermined. He was returned to work after each of these incidents.

After the occurrence in question, in 1950, Selby experienced seizures four or five times a week, described as Jacksonian in nature, indicating the cause to be a lesion or tumor of the left side of the brain. These seizures produced headaches, vomiting and a weakness to the right side of the body. Selby consulted several doctors after the 1950 accident concerning both the seizures and the back condition. An osteopath diagnosed the back condition as a sacroiliac strain. In April 1954 Selby had an operation in which a slowly growing malignant tumor on the left side of his brain was partially removed. There was evidence tending to prove that total removal would have hastened Selby's death. Selby died December 28, 1954 after having been employed by defendant about 27 years.

 Under the named federal statutes, this court is bound to apply federal rules rather than state rules of law. Uniformity is an object of this legislation. (Brady v. Southern Ry. Co., 320 U. S. 476; Virgil v. New York, C. & St. L. R. Co., 347 Ill. App. 281.) Deci-

sions concerning inefficient hand brakes recognize two methods of showing a railroad's liability. All that need be proved is either a specific defect in the brake, or a normal, ordinary operation by the brakeman and a failure of the brake to function efficiently. Negligence need not be proved. (Myers v. Reading Co., 331 U. S. 477; Didinger v. Pennsylvania R. Co., 39 F.2d 798.) This proof, of course, can be made by either direct or by circumstantial evidence.

In Myers v. Reading Co., 331 U. S. 477, the plaintiff sued for injuries received from a faulty hand brake. The plaintiff testified that the brake chain was loose after the brakes had once been set, and when he tried to set the brake the second time it was "stiff." While plaintiff attempted to set the brake and had his hand on the brake wheel, the brake kicked back, throwing him to the ground. The jury found plaintiff's injuries were caused by an inefficient hand brake. The district court granted the defendant's motion for judgment notwithstanding the verdict.

Reversing the district court, the Supreme Court said at pages 482–483 that,

"A railroad subject to the Safety Appliance Acts may be found liable if the jury reasonably can infer from the evidence merely that the hand brake which caused the injuries was on a car which the railroad was then using on its line, in interstate commerce, and that the brake was not an 'efficient' hand brake."

As to requisite proof, the court continuing in the Myers case said at page 483,

" 'Proof of an actual break or visible defect in a coupling appliance is not a prerequisite to a finding that the statute has been violated. Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before

401

and after the occasion in question. The test in fact is the performance of the appliance' . . . Spotts v. Baltimore & O. R. Co., [102 F.2d 160, 162]."

The Myers case does not purport to establish a minimum standard for probative facts upon which liability can be predicated.

In analogous areas, other decisions indicate predication of liability on proof of a lessor quantum of probative evidence than is present in Myers v. Reading Co., supra. In Lavender v. Kurn, 327 U. S. 645, as here, there were no eyewitnesses. The circumstances in that case showed that the train had a mail hook on one of its cars capable of swinging horizontally when the train rounded a curve, and that decedent's position would have placed him where the mail hook could possibly have struck him on the head. Plaintiff theorized that decedent was struck by the swinging hook. In concluding that the facts were sufficient to require the issues to go to the jury, the court said at page 653:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion."

The recent case of Schulz v. Pennsylvania R. Co., 350 U. S. 523, also presented the question whether the evidence in an action under the Jones Act was sufficient to warrant submitting the issues to the jury. There the district court directed a verdict for the

defendant. Plaintiff's decedent worked for defendant tending tug boats that were moored at a Jersey City dock. On the night that decedent disappeared while at work, he had been seen checking the tugs. He went to one of the tugs to change his clothes. Later that night it was discovered that the decedent was missing. His lunch and some of his clothes were found on the tug where he usually changed clothes. Several weeks later, his partially clothed body was found in the water with a flashlight clutched in his hand. Death had been caused by drowning. Because it had been cold that night, and there had been little lighting on the tugs, it was the plaintiff's theory that decedent had slipped on ice in the dark while performing his duties, fell into the water and drowned.

The court speaking of the constitutional right to a jury trial said at page 526:

"For 'The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.' Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn."

To the same effect see Eglsaer v. Scandrett, 151 F.2d 562, where plaintiff's decedent was an engineer on defendant's railroad. While the train was stopped, decedent went out on the engine's cat-walk to fix a faulty automatic bell ringer. The fireman continued to stoke the fire, creating a great amount of steam so that the engineer was lost from the fireman's view. When the brakeman signalled for the train to start, the fireman called to the decedent but got no response. He found decedent lying on the ground alongside the engine, immediately beneath the automatic bell ringer.

The engine was dirty with coal dust. Also, there was a cloud of steam from the boiler. A loose rope of the kind used on the manual bell ringing apparatus was found lying alongside the hand rail adjacent to the bell ringer. A smudged heel mark was found on the engine cat-walk. No one saw the engineer fall.

The district court granted defendant's motion for judgment notwithstanding the verdict on the ground that no causal connection between defendant's negligence and decedent's death had been established. On appeal the Court of Appeals in reversing the district court held that the evidence did give rise to a reasonable inference that there was a causal connection, since the decedent might have grabbed the loose rope and lost his footing, thus being thrown to the ground.

In the instant case the defendant had no official records of the condition of the hand brakes on the cars Selby rode. There was testimony that the type of brake here involved has been known to kick back unexpectedly. After the injury, the cars involved were found standing with their brakes set where Selby had descended from them. Defendant's witness Rice testified that he inspected the cars and that they had bad order tickets on them, ordering only the repair of a worn "E" knuckle and the air brakes. These cars had been in service for at least 16 years.

Defendant suggests that it would be impossible for the brake club to have struck Selby in the head even if the brake had kicked out. We think that the description of the operation of the hand brake given by the witness Moenning could account for the head injury to Selby. Moenning testified that Selby was "bent over in a position so that he could operate that brake with good force."

 From a careful examination of the record, we think that the jury could reasonably find that the hand brake did not function efficiently by kicking back,

causing the brake club, which was inserted between the brake wheel spokes, to strike decedent on the head.

Defendant has cited decisions denying recovery (Woods v. New York, C. & St. L. R. Co., 339 Ill. App. 132, where the only evidence of a defective hand brake was that the car was at two different times in two different positions; Carter v. Peoria & P. U. Ry. Co., 286 Ill. App. 532, where verdict for plaintiff was reversed as being against the manifest weight of the evidence; Nealis v. Chicago, R. I. & P. Ry. Co., 173 Minn. 587, 218 N. W. 125, and Staton v. Virginian Ry. Co., 119 W. Va. 658, 195 S. E. 601, where there was a failure to show causal connection). These authorities, we think, can be readily distinguished from the instant case.

■ In the case at bar the fact that the cars were found standing with their brakes set where Selby had left them does not necessarily tend to prove that the hand brake was not inefficient. (See Donnelly v. Pennsylvania R. Co., 342 Ill. App. 556, aff'd 412 Ill. 115; Welch v. New York, C. & St. L. R. Co., 5 Ill.App.2d 568.)

Defendant further contends that the words "bad brake" uttered by decedent shortly after his collapse should be construed as "bad break." The construction of these words when considered in the light of the other facts and circumstances shown by the evidence, we think, presented an issue of fact for the jury to determine.

Defendant maintains that there was no proof that the alleged accident caused the injuries and death. In particular, it attacks the form of the hypothetical question and the evidentiary basis for the finding of causal connection. To show causal connection, plaintiff's counsel asked his expert witness, Dr. Conley, a hypothetical question assuming all the facts of the case in the following words:

405

". . . have you an opinion based upon a reasonable degree of medical certainty as to whether or not there might or could be a causal connection between the accident of June 19, 1950, and the subsequent condition of ill-being of the hypothetical person?"

Dr. Conley answered:

"There could be, might be a causal connection between the condition of the ill-being and the head injury."

Defendant introduced contrary expert testimony. Defendant says that the answer of plaintiff's witness could only be based upon conjecture. We disagree.

██ In our view the hypothetical question and the answer raised an issue of fact. The form of the question and answer is proper. (Kimbrough v. Chicago C. Ry. Co., 272 Ill. 71, 77. To the same effect see Sourian v. Jones, 350 Ill. App. 365.) That other courts require a more positive form of statement (see Fort Worth & Denver C. Ry. Co. v. Smith, 206 F.2d 667; Saaf v. Duluth Police Pension Relief Ass'n, 240 Minn. 60, 59 N.W.2d 883) cannot control here. Nor does Kanne v. Metropolitan Life Ins. Co., 310 Ill. App. 524, contradict our holding here, for in that case the court found no facts in the record showing that decedent even suffered from the disease to which the expert hypothetically attributed his death. In the case before us, there is proof that Selby's injury could have caused his death.

Defendant says that the case was not submitted to the jury on the theory that the mishap in 1950 could have caused the tumor from which Selby died nor on the theory of aggravation of the tumor. Defendant's position we think is untenable for the reason that plaintiff's expert, Dr. Conley, said the 1950 incident could have caused Selby's "ill-being." Moreover, on cross examination, Dr. Conley clarified his answer by stating that in his opinion the 1950 incident did not

cause the tumor from which Selby ultimately died. However, the doctor reasserted that the incident in 1950, as indicated by an increase in the frequency of seizures, contributed to Selby's ill-being. From this testimony, the jury could find that the 1950 injury aggravated the tumor, increased its malignancy, produced the seizures experienced by Selby, and ultimately contributed to his death.

At the defendant's request, the court gave the following instruction which reads:

"Plaintiff cannot recover in this case if such alleged injuries and disabilities were the result solely of the earlier accidents of 1939, 1942, or 1949; nor can plaintiff recover if you are in doubt or unable to say whether or not the said alleged injuries or disabilities were caused by the alleged accident of June 19, 1950, or the said earlier accidents of 1939, 1942, or 1949."

In view of the language of this pre-emptory instruction, we think there can be no doubt that the jury in arriving at its verdict believed that there was a causal connection between Selby's mishap in 1950 and his "alleged injuries and disabilities."

The law now seems well established that in cases arising under the Federal Employer's Liability Act that if negligence has a causal relation or if the injury or death resulted in part from defendant's negligence, there is liability. (Dowler v. N. Y., C. & St. L. R., 5 Ill.2d 125; Wawryszyn v. Illinois Cent. R. Co., 10 Ill.App.2d 394.)

For the reasons stated, the judgment for plaintiff is affirmed.

Judgment affirmed.

FEINBERG, P. J. and KILEY, J., concur.